**X–TRA ART; Linda Weill,**
**Plaintiffs–Appellants,**

v.

**CONSUMER PRODUCT SAFETY**
**COMMISSION, Defendant–**
**Appellee.**

**No. 91–16027.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1992.

Decided July 8, 1992.

---

**2.** For the full text of section 10–A, see note 1 *supra.*

John D. O'Connor and Laura E. Malkofsky, Tarkington, O'Connor & O'Neill, San Francisco, Cal., for plaintiffs-appellants.

Daniel G. Jarcho, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before: GOODWIN, SCHROEDER, and BEEZER, Circuit Judges.

SCHROEDER, Circuit Judge:

This appeal arises from a dispute between the Consumer Product Safety Commission (CPSC) and X–TRA ART, a small business founded by an elementary school teacher to manufacture and distribute "Rainbow Foam Paint" to day care centers, preschools, and elementary schools. The product is a mixture of shaving cream and food coloring intended for use as finger paint by children ages 3 and older.

X–TRA ART filed this action in district court claiming that the CPSC had unlawfully declared the paint to be a "banned hazardous substance," and seeking review of such a determination, as well as injunctive relief, under the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The district court dismissed the action, ruling that there had been no "final agency action" subject to review under the APA, and that the proper forum for adjudicating whether the product was a banned hazardous substance was the seizure and condemnation proceeding instituted pursuant to 15 U.S.C. § 1265. That statute authorizes the seizure of a "banned hazardous substance" held for sale. The district court's decision was in accord with the only circuit decision dealing with similar issues of enforcement under the Consumer Product Safety Act, *United States v. Articles of Hazardous Substance*, 588 F.2d 39 (4th Cir.1978). We affirm.

Linda Weill invented "Rainbow Foam Paint" in approximately 1985, obtained a patent for it, and founded X–TRA ART. The shaving cream-food coloring mixture is dispensed from a pressurized can and is sold in various colors. The product has been sold extensively to public schools.

The CPSC received a referral from a private consumer organization in December of 1990, and shortly thereafter conducted laboratory tests to determine the safety of the product. The testing revealed that the hydrocarbon propellant used for dispensing the Rainbow Foam Paint was highly flammable. This is inevitable in the pressurized

cannister industry, as all hydrocarbon propellants are flammable, and hydrocarbon propellants are a necessary ingredient for the creation of foam. Each Rainbow Foam Paint cannister contained approximately 7% propellant, a relatively low amount in comparison to other products using hydrocarbon propellants. According to the CPSC, its tests demonstrated that some Rainbow Foam Paint cannisters, when sprayed into a flame from a horizontal or inverted position, produced a vertical flame 12 to 14 inches high and a "flashback" from the test flame to the paint cannister. On January 17, 1991, the CPSC sent a "letter of advice" to Linda Weill explaining that as a result of the tests conducted by CPSC, Rainbow Foam Paint had been classified by the CPSC staff as a banned hazardous substance under the Federal Hazardous Substance Act (FHSA). 15 U.S.C. §§ 1261–1274.

There ensued a rancorous exchange of correspondence between CPSC staff and counsel for Ms. Weill as to whether the substance should be categorized as a "banned hazardous substance" and enforcement action undertaken. It is apparent that Weill and her counsel became increasingly frustrated over what they perceived to be excessive threats on the part of staff of the Commission in the absence of any action by the Commission officially declaring the product a banned substance under the provisions of the Act. They repeatedly defended the safety of the product.

On April 26, 1991, the U.S. Attorney's Office in New Haven, Connecticut, filed a seizure complaint in federal district court as a result of a referral from the CPSC. The suit named as defendant the Rainbow Foam Paint cannisters stored at a preschool toy distribution warehouse in Connecticut. X–TRA ART, Inc. and Linda Weill then filed this action in the Northern District of California. They have also intervened in the Connecticut proceedings.

■ Under the FHSA, any substance, or mixture of substances, that is flammable or combustible is a "hazardous substance" if it may cause substantial illness or injury as

a proximate result of foreseeable use. 15 U.S.C. § 1261(f)(1)(A); *Pactra Industries v. Consumer Product Safety Comm'n,* 555 F.2d 677, 679 (9th Cir.1977). A toy, or other article intended for use by children, is a "banned hazardous substance" if it "is a hazardous substance, or bears or contains a hazardous substance in such a manner as to be susceptible of access by a child." 15 U.S.C. § 1261(q)(1)(A). This subsection, applicable to products intended for children, defines a "banned hazardous substance" in terms that do not require a formal classification by regulation, if the product contains a hazardous substance accessible to children.

The Commission may also proceed against a hazardous substance after formal rule-making under sections 1261(q)(1)(B) and (q)(2). If the Commission proceeds pursuant to its rule-making authority, the proposed regulation is published, interested persons are entitled to comment, and, following publication, if any adversely affected person files an objection, a public hearing is held. 21 U.S.C. § 371(e)(2); *Pactra Industries,* 555 F.2d at 677. Any person adversely affected by the regulation finally promulgated by the Commission can file a petition for review with the United States Court of Appeals. 21 U.S.C. § 371(e)(3).

The problem in this case stems from the fact that the Agency did not engage in formal rule-making but proceeded against Rainbow Foam Paint first informally through Agency staff, and then through the U.S. Attorney who instituted the condemnation proceeding. Our reading of the statute comports with that of the Fourth Circuit which concluded that the Agency is not required to proceed by formal rule-making and may "go directly to court upon its allegation that the goods or substances meet the statutory definition [of a banned hazardous substance]." *Articles of Hazardous Substance,* 588 F.2d at 42.

In this case, the plaintiff seeks review in district court under the Administrative Procedure Act in the absence of any formal Agency rule-making. The appellants vigorously maintain that the Commission has in fact treated their substance as banned, and that conduct which they view as threatening and harassing should not escape judicial review. Their frustration has been understandably exacerbated by the Commission's refusal to acknowledge, even after the filing of the seizure action in Connecticut, that it has made a product safety determination for which it should be accountable. Here the Commission is accountable for instituting the condemnation proceeding. Under the statutory scheme established, where the Commission opts to proceed in court on an allegation that the substance is a banned hazardous substance, the issue should be litigated by the manufacturer in that forum. As the Fourth Circuit explained: "where the Commission elects to [go directly to court] in a Section 1265 proceeding, the issue of whether the [product] is, in fact, a 'banned hazardous substance' is a question to be later determined in a hearing on the merits in the condemnation proceeding." *Id.* at 42. Such procedure does not violate the requirements of due process. *Ewing v. Mytinger & Casselberry,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

AFFIRMED.