34 F.3d 91
 94 Ed. Law Rep. 52
 UNITED STATES of America, Appellant,
v.
ARTICLES OF BANNED HAZARDOUS SUBSTANCES CONSISTING OF AN
UNDETERMINED NUMBER OF CANS OF RAINBOW FOAM PAINT, Defendant,
Linda Weill and X-Tra Art, Inc., Claimants-Appellees.
 No. 686, Docket 92-6271.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 3, 1993.
Decided Sept. 2, 1994.
 
 Michael S. Raab, U.S. Dept. of Justice, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Douglas N. Letter, David A. Levitt, Attys., U.S. Dept. of Justice, Washington, DC, Albert S. Dabrowski, U.S. Atty. for the D. of Conn., Christopher F. Droney, U.S. Atty. for the D. of Conn., New Haven, CT, Jerry G. Thorn, General Counsel, Alan Shakin, Asst. General Counsel, Jayme Rizzolo Epstein, Atty., U.S. Consumer Product Safety Com'n, Washington, DC, of counsel), for appellant.
 John F. Triggs, New York City (Jacobson & Triggs, of counsel), for claimants-appellees.
 Before: KEARSE, PIERCE and JACOBS, Circuit Judges.
 PIERCE, Circuit Judge:
 The United States ("Government") appeals from an April 19, 1993 order of the United States District Court for the District of Connecticut (Peter C. Dorsey, Judge ). On April 26, 1991, the United States Attorney for the District of Connecticut initiated a civil forfeiture action, arising under the Federal Hazardous Substances Act, 15 U.S.C. Secs. 1261-1276, against an undetermined number of cans of Rainbow Foam Paint. On September 9, 1992, the district court granted summary judgment to the claimants-appellees, Linda Weill and X-Tra Art, Inc. (collectively, the "Claimants"), against the Government, ruling that Rainbow Foam Paint is exempt pursuant to the statute's definition of a "banned hazardous substance" because the product is an educational art material. Judgment was entered on September 23, 1992. On April 19, 1993, the district court granted reconsideration of its September 23, 1992 judgment, and issued an order which, inter alia, "adher[ed] to its prior ruling." The Government now appeals from that order. Reversed and remanded.
 
 BACKGROUND
 
 1
 Linda Weill, an elementary school art teacher, developed a type of finger paint which consists of colored foam dispensed from a self-pressurized canister which she named "Rainbow Foam Paint." Rainbow Foam Paint is, basically, shaving cream colored with pre-mixed food coloring, and is intended for use by children ages three and older. Weill obtained a United States patent for her product in 1986, and formed a company, X-Tra Art, Inc., to distribute the product. Rainbow Foam Paint has been on the market since 1986 and is, according to Weill, purchased primarily by teachers for use in the classroom. The product is also marketed as a children's bath product. On April 3, 1987, the California Department of Health Services approved the product "for purchase by schools for use by children in kindergarten and grades 1-6." Although the product contains hazardous hydrocarbon propellants, such as Isobutane and Propane, the Material Safety Data Sheet provided by the manufacturer indicates that Rainbow Foam Paint is, similar to other aerosol shaving creams containing hydrocarbon propellants, classified as nonflammable.[1]
 
 
 2
 In 1990, Consumers Union, publisher of Consumer Reports magazine, mentioned in its children's magazine, Zillions, that Rainbow Foam Paint was a possible hazard because of flammability. The magazine stated that Rainbow Foam Paint could "catch fire if used near a flame ... if not shaken," and thus was a dangerous toy that needed a "big, bold" warning, which it did not have. Weill contacted Consumers Union concerning the article and "demanded an immediate retraction." She received a letter from Consumers Union dated December 12, 1990, which stated that the report in Zillions had been inaccurate, and also stated that it intended "to retract it in the next issue" of the magazine since it had concluded that "the momentary flash [it] observed ... presents no hazard." In a letter addressed to Weill dated December 18, 1990, Consumers Union again indicated its intention to print a retraction of the Zillions report.
 
 
 3
 Shortly after receiving the December 18, 1990 letter, Weill notified Consumers Union that she intended to sue it for money damages despite the retraction. Thereafter, on December 31, 1990, Consumers Union wrote a letter to Weill stating that it would not print a retraction of the Zillions report, and, furthermore, was referring the matter to the Consumer Product Safety Commission ("CPSC"), as it believed the product violated the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. Secs. 1261-1276.[2]
 
 
 4
 On January 2, 1991, fourteen cans of Rainbow Foam Paint were collected by the CPSC from an X-Tra Art, Inc. officer. On January 9, 1991, the product was tested in the upright, sideways, and upside down positions, under the method prescribed in the applicable regulations, 16 C.F.R. Sec. 1500.45.[3] On April 9, 1991, the CPSC collected twenty-four cans of Rainbow Foam Paint from the Early Learning Center, located in Milford, Connecticut. The Learning Center's merchandise director provided an affidavit stating that the cans of Rainbow Foam Paint were received from X-Tra Art, Inc. The product was tested in a manner similar to the previously collected cans, pursuant to FHSA regulations. Following these tests, the CPSC determined that Rainbow Foam Paint canisters were flammable when tested in the upside down position, and may cause substantial personal injury with reasonably foreseeable use. Therefore, the CPSC concluded that Rainbow Foam Paint was a "banned hazardous substance" under the FHSA.[4] The CPSC requested that Weill stop distributing the product and indicated that she could be fined up to $1,250,000 if she failed to do so. When Weill refused to cease distribution of the paint, the CPSC notified the United States Attorney's Office.
 
 
 5
 On April 26, 1991, the United States Attorney's Office in New Haven, Connecticut, initiated the instant seizure action in the United States District Court for the District of Connecticut, pursuant to 15 U.S.C. Sec. 1265,[5] against an undetermined number of cans of Rainbow Foam Paint stored in the Learning Center warehouse in Connecticut where several cans used for CPSC testing had been collected. The Claimants did not challenge the seizure of the cans in Connecticut, but instead filed suit against the CPSC in the United States District Court for the Northern District of California, where X-Tra Art, Inc. is located, seeking a review of the determination that the paint was a banned hazardous substance. See X-Tra Art v. Consumer Product Safety Comm'n, 969 F.2d 793, 795 (9th Cir.1992). The Ninth Circuit affirmed the district court's dismissal of the action, determining that the action in Connecticut was the appropriate forum for resolution of the issues. Id. at 796. On June 14, 1991, a default judgment was entered against the seized cans in the district court in Connecticut. While the California action was pending, however, the Connecticut court vacated the default judgment, and permitted the Claimants to intervene. During the course of the civil forfeiture proceeding in Connecticut, the seized cans of Rainbow Foam Paint were accidentally destroyed.[6]
 
 
 6
 On January 16, 1992, the district court in Connecticut denied the Government's motion to compel discovery from the Claimants concerning whether the product was marketed as a toy rather than as an educational material. Thereafter, on May 27, 1992, the Claimants moved for summary judgment, claiming that Rainbow Foam Paint was exempt from classification as a "banned hazardous substance" under 16 C.F.R. Sec. 1500.85 because it was an art material.[7] On May 29, 1992, the Government cross-moved for summary judgment, arguing that Rainbow Foam Paint was marketed as a toy rather than an educational or art material. The Government also argued that since the paint was intended for use by children as young as three years old, who could not read and comprehend warning labels, the warning contained on the product was insufficient.
 
 
 7
 On September 9, 1992, the district court granted summary judgment for the Claimants against the Government. The court ruled that Rainbow Foam Paint was not a "banned hazardous substance" within the meaning of the FHSA because it came within the exemption for adequately labeled art materials. The court rejected the contention that the product should be classified as a toy because it was sold in toy stores. With respect to the argument that warning labels on the product were inadequate because the product was targeted at children too young to read the warning labels, the court stated that, "it must be concluded that the label on Rainbow Foam Paint, which conforms to the dictates of 16 C.F.R. Sec. 1500.130, adequately warns adults who would potentially supervise the use of the product with children."[8] The district court concluded that "Congress may have decided to rely on the premise that [any] danger is alleviated, as a child's access to the product would only be through an adult." The court placed particular reliance on a letter from the CPSC addressed to Weill which referred to Rainbow Foam Paint as an "art material." Judgment was entered on September 23, 1992.
 
 
 8
 On April 19, 1993, the district court granted the Government's motion for reconsideration of its September 23, 1992 judgment, and entered an order which, inter alia, "adher[ed] to its prior ruling." In addition, the district court denied the Government's motion for a certificate of reasonable cause to seize the paint. The Government now appeals from that order. Reversed and remanded.
 
 DISCUSSION
 
 9
 The Government argues on appeal that the district court erred in granting summary judgment to the Claimants for two reasons. First, the district court deviated from the plain language of the FHSA, 15 U.S.C. Sec. 1261(q)(1), which requires that, for an article to be exempt under 16 C.F.R. Sec. 1500.85, the intended child user must be of sufficient maturity to "read and heed" any warnings provided. Thus, where, as here, a hazardous product is intended for use by children too young to read, it cannot be exempt from the statutory ban. Second, the Government argues that the district court erred in granting summary judgment "without first permitting requested discovery concerning the marketing of Rainbow Foam Paint." The Claimants contend that the CPSC erred in classifying Rainbow Foam Paint as a banned hazardous substance because (1) the product is not flammable, and (2) the CPSC failed to establish that the product "was capable of causing substantial illness or substantial personal injury as a result of any customary or reasonably foreseeable handling or use." They also argue that the paint is exempt from classification as a "banned hazardous substance" because it is an art material.
 
 
 10
 This Court reviews a grant of summary judgment de novo, viewing all evidence in the light most favorable to the party opposing the motion. Prunier v. City of Watertown, 936 F.2d 677, 679 (2d Cir.1991). Where the submissions and pleadings in a summary judgment motion demonstrate "that there is no genuine issue as to any material fact ... [then] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment ..., a [party] must present evidence based on which 'reasonable jurors could find by a preponderance of the evidence that the [party] is entitled to a verdict.' " Prunier, 936 F.2d at 679 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 11
 The district court did not directly address the question of whether Rainbow Foam Paint is a hazardous substance within the meaning of the statute, 15 U.S.C. Sec. 1261(f)(1)(A) (1988), and the Claimants dispute this classification by the CPSC. A product cannot be a "banned hazardous substance" unless it is first determined to be a hazardous substance. The statute defines a hazardous substance as "[a]ny substance or mixture which ... (v) is flammable or combustible, ... if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use." 15 U.S.C. Sec. 1261(f)(1)(A). The CPSC determined, after testing the product, that it was flammable because it exhibited flashback when tested according to applicable regulations.
 
 
 12
 The Claimants contend that the test for flammability in the regulations should only be applied to sprays, and not to foams. Their only support for this proposition is the opinion of their expert. The regulations deal specifically with self-pressurized containers, like the canisters herein. See 16 C.F.R. Sec. 1500.3(c)(6)(viii). Furthermore, there is no exception in the regulations for self-pressurized canisters containing foam products. See generally 16 C.F.R. Sec. 1500.3 (Federal Hazardous Substances Act Regulations). It is a well-established rule in this Circuit that experts are not permitted to present testimony in the form of legal conclusions. See, e.g., Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir.1992); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). Accordingly, the Claimants cannot rely upon the opinion of their expert as a legal fact, and this claim lacks merit.
 
 
 13
 The Claimants also argue that the flammability testing of the CPSC was flawed because "[t]he CPSC did not test the cans in the customary and normal manner in which cans are used--upright." This claim lacks merit as the record establishes that the product was tested in the upright position, as well as sideways and upside down. In any event, as discussed below, it is foreseeable that young children may try to dispense paint with the can in a non-upright position.
 
 
 14
 The Claimants next argue that the CPSC's finding of flammability was flawed because it "failed to conduct any fact-finding[,] contrary to the mandates of the statute, regulations, and its ... policy." This contention also lacks merit. In cases brought under the analogous seizure provision of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. Sec. 334 (1988 & Supp. V), the creation of an administrative record has not been a necessary precursor to a seizure action. See United States v. X-Otag Plus Tablets, 602 F.2d 1387, 1390-91 (10th Cir.1979); United States v. 225 Cartons, More or Less, of an Article of Drug, 687 F.Supp. 946, 962 (D.N.J.1988), aff'd, 871 F.2d 409, 413, 420 (3d Cir.1989). In any event, the CPSC may elect to "go directly to court upon its allegation that the goods or substances meet the statutory definition [of a banned hazardous substance]." X-Tra Art, 969 F.2d at 796 (internal quotation marks and citation omitted).
 
 
 15
 The Claimants argue that "[i]t is undisputed that shaving creams, including Rainbow Foam Paint, ... are not 'flammable' under [the FHSA]." However, this statement fails to reckon with the fact that the contents of a self-pressurized can are considered to be flammable if "flashback (a flame extending back to the dispenser) is obtained at any degree of valve opening." 16 C.F.R. Sec. 1500.3(C)(6)(viii) (1993). Accordingly, Rainbow Foam Paint was determined by prescribed testing methods to be flammable.
 
 
 16
 The Claimants argue that, in addition to not being flammable, Rainbow Foam Paint is not capable of causing substantial injury or illness with customary or reasonably foreseeable use. The Government contends that it is reasonably foreseeable that young children may try to dispense the paint with the can sideways or upside down and could receive substantial injuries if the product is used in this way near a flame or spark. The Claimants dispute that such use is reasonably foreseeable since children will normally be supervised in their use of the product by an adult. In general, this Court should defer to the agency's interpretation of the substantial injury requirement if it is not "arbitrary, capricious or manifestly contrary to the statute." Chevron v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); cf. Director, OWCP v. General Dynamics, 982 F.2d 790, 796 (2d Cir.1992) ("Applying the deference analysis of Chevron ..., we hold that the Director's interpretation [of the applicable statute] is reasonable because it implements the congressional purpose [of the statute]."). Herein, the statute does not require that the product be likely to cause injury, but only that it "may cause substantial injury ... during or as a proximate result of any customary or reasonably foreseeable handling or use." 15 U.S.C. Sec. 1261(f)(1)(A) (emphasis added). Thus, as Rainbow Foam Paint was found, under proper testing conditions, to cause "flashback" in some instances, it could, conceivably, "cause substantial injury" during "reasonably foreseeable ... use," and may properly be characterized as a hazardous substance.
 
 
 17
 Whether the product is a "banned hazardous substance," however, depends upon whether it is exempt from that definition as an art or educational material. The Government points out that the proviso authorizing the Secretary to exempt certain items specifically makes the exemption contingent upon the item being "intended for use by children who have attained sufficient maturity, and may reasonably be expected, to read and heed such directions and warnings." 15 U.S.C. Sec. 1261(q)(1). The Government's reading of the statutory language is reasonable, as even the district court acknowledged, stating,
 
 
 18
 [a] reading of 16 C.F.R. Sec. 1500.85 and 15 U.S.C. Sec. 1261(q)(1)(A) in tandem, as the [G]overnment recommends, would seem to suggest that no artistic material containing a potentially hazardous substance can be designed for use by young children who cannot yet read, even when used under the supervision of an adult.
 
 
 19
 The district court rejected this interpretation, however, because it did not believe the Government was advocating that position, and because it surmised that Congress may have believed that adult supervision would suffice when a child was not of sufficient maturity to read and heed a warning.
 
 
 20
 We disagree with the district court's reasoning that likely adult supervision nullifies the language in the proviso. The statutory language is clear on its face--the text of Sec. 1261(q)(1), which provides for an exemption from the definition of "banned hazardous substance" only if a product intended for use by children is accompanied by a warning that the child users can themselves "read and heed." Where, as here, the language of the statute is clear, " 'judicial inquiry is complete.' " Connecticut Nat'l Bank v. Germain, --- U.S. ----, ----, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701-02, 66 L.Ed.2d 633 (1981)). Thus, here, the use of other tools of statutory interpretation, such as legislative history, are not necessary. In addition, the regulations implementing the proviso did not have to repeat the "read and heed" language, as the Secretary is not required to address an issue in the regulations that Congress has already addressed in the statute. See Schweiker v. Gray Panthers, 453 U.S. 34, 50 n. 22, 101 S.Ct. 2633, 2643 n. 22, 69 L.Ed.2d 460 (1981). Thus, a product that is determined to be hazardous within the meaning of the statute cannot be exempt under the regulations, even if it is an art material,[9] if its intended child user is too young to read and heed a warning label.
 
 
 21
 We conclude that the language of Sec. 1261(q)(1) focuses on the intended user of the product, and, therefore, the fact that Rainbow Foam Paint is purchased by adults is irrelevant. Rainbow Foam Paint is intended for use by children as young as three years old, and it cannot reasonably be argued that children who are three years old can "reasonably be expected" to be able to "read and heed" a proper warning label. The CPSC's determination, after adequate testing, that Rainbow Foam Paint was a hazardous substance does not appear to be arbitrary or capricious. Thus, the product could be properly classified as a "banned hazardous substance," since it contains a hazardous substance and is intended for use by children who are too young to read the warnings provided. The district court erred, therefore, in granting summary judgment for the Claimants, even if it correctly determined that the product was an art material. In light of these conclusions, we believe that it is appropriate in this case to reverse the district court's grant of summary judgment to the Claimants, and direct the entry of summary judgment for the Government. See Coalition Against Columbus Ctr. v. City of New York, 967 F.2d 764, 775-76 (2d Cir.1992).
 
 CONCLUSION
 
 22
 We have considered all of the claims raised by the Claimants, and find them to be without merit. We therefore reverse entry of summary judgment for the Claimants, and remand to the district court for entry of summary judgment in favor of the Government.
 
 JACOBS, Circuit Judge, concurring:
 
 23
 I concur in the opinion in every respect, and write separately only to underline an aspect of this case that is implicit in the opinion.
 
 
 24
 The outcome of this appeal is compelled by the CPSC's administrative classification of Rainbow Foam Paint as a banned hazardous substance within the meaning of the Federal Hazardous Substance Act. As the opinion carefully sets forth, the CPSC has power and discretion to do that: the statute classifies flammable substances as hazardous, and exempts toys in which a hazardous substance is functionally required only if intended for use by children who (inter alia ) can "read and heed" the warning; and the relevant CPSC regulation exempts art materials and the like only if they bear adequate warnings. However, Ms. Weill contends--and the United States does not dispute--that the CPSC has in the past relied on parents and teachers to act on the warning labels affixed to art supplies, and has not previously exercised its discretion to ban art materials on the ground that the small children who may use the glue or the scissors cannot "read and heed" the warnings. The CPSC's action in this case is therefore a departure from its practice of granting exemptions for a wide variety of products, ranging from art materials such as glues and paints to firecrackers (16 C.F.R. Sec. 1500.85(a)(2)) and alcohol-based fuels (16 C.F.R. Sec. 1500.85(a)(5)). In each case, it is clear that some children who cannot "read and heed" the warning will nevertheless be given these products, to be used under appropriate adult supervision. In this case, the CPSC acts for the first time on the assumption that the adults who buy art materials and give them to small children cannot be relied upon to read the label and implement its warnings.
 
 
 25
 It may seem odd that the CPSC would initiate this policy in order to ban a finger paint, composed of shaving cream and vegetable coloring, on the ground that it is hazardous when sprayed into "a vertical flame of 12-14 inches" (A-86). Why finger paint would entail a greater fire hazard than, say, the paper to which it is applied, seems unaccountable. The only explanation in the record for this regulatory assault on finger paint is the threat by Ms. Weill's company to sue Consumers Union for publishing what Consumers Union conceded to be a damaging and erroneous safety advisory. In response to that threat, Consumers Union backed away from its proffered retraction, and invited regulatory action by the CPSC--action that would (not incidentally) insulate Consumers Union from liability. It is evident that the CPSC or its staff undertook this regulatory initiative to forestall a private litigation by Linda Weill and her company against Consumers Union. The squashing of Linda Weill and X-Tra Art, Inc. by the CPSC seems to me to be a sinister exercise of discretion.
 
 
 
 [1]
 The Government has acknowledged that "all propellants do not present flammability hazards," and that "no injuries or incidents have been reported which were associated with [Rainbow Foam Paint]."
 
 
 [2]
 The FHSA was enacted to promote the safety of consumer products sold for use by children. See H.R.REP. NO. 2166, 89th Cong., 2d Sess. (1966), reprinted in 1966 U.S.C.C.A.N. 4095, 4095-96. The CPSC is the independent federal agency which (a) administers the FHSA, and (b) promulgates the regulations implementing the FHSA
 
 
 [3]
 The regulations provide that the flammability of self-pressurized containers be tested by, inter alia, placing the container six inches from the flame source and spraying for a period of 15 to 20 seconds, with three readings taken for each test. 16 C.F.R. Sec. 1500.45
 
 
 [4]
 The FHSA provides in pertinent part:
 The term "banned hazardous substance" means (A) any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted; ... Provided, That the Secretary, by regulation, (i) shall exempt from clause (A) of this paragraph articles, such as chemical sets, which by reason of their functional purpose require the inclusion of the hazardous substance involved or necessarily present an electrical, mechanical, or thermal hazard, and which bear labeling giving adequate direction and warnings for safe use and are intended for use by children who have attained sufficient maturity, and may reasonably be expected, to read and heed such directions and warnings....
 15 U.S.C. Sec. 1261(q)(1) (1988) (emphasis added).
 
 
 [5]
 Section 1265 of the FHSA provides for the seizure and condemnation of "[a]ny misbranded hazardous substance or banned hazardous substance ... while in interstate commerce or at any time thereafter ... in any district court in the United States within the jurisdiction of which the hazardous substance is found." 15 U.S.C. Sec. 1265 (1988)
 
 
 [6]
 Although the seized cans of paint were accidentally destroyed, destruction of the res does not divest the district court of jurisdiction unless a judgment by the court will have no effect whatsoever. See Republic Nat'l Bank of Miami v. United States, --- U.S. ----, ----, 113 S.Ct. 554, 558, 121 L.Ed.2d 474 (1992). The real dispute herein is whether the Claimants can continue to distribute the product
 
 
 [7]
 That regulation provides in pertinent part:
 (a) The term banned hazardous substances ... shall not apply to the following articles provided that these articles bear labeling giving adequate directions and warnings for safe use:
 (4) Educational materials such as art materials, preserved biological specimens, laboratory chemicals, and other articles intended and used for educational purposes.
 
 
 [16]
 C.F.R. Sec. 1500.85(a)(4) (1993)
 
 
 [8]
 The warning labels on cans of Rainbow Foam Paint read as follows:
 CAUTION: CONTENTS UNDER PRESSURE[;] SHAKE CAN BEFORE USING[;] HOLD UPRIGHT[;] ADULT SUPERVISION RECOMMENDED AS WITH ANY PAINTS OR PRODUCTS UNDER PRESSURE[;] DO NOT PUNCTURE OR INCINERATE, OR EXPOSE TO HEAT ABOVE 120 F.
 
 
 [9]
 Although the Government disputes the classification, Rainbow Foam Paint is clearly an art material, even if it is sold in toy stores. Many children's artistic and educational materials are sold in toy stores, such as chemistry sets, Crayola crayons, paint-by-numbers sets, etc