**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN APPAREL &
FOOTWEAR ASSOCIATION, INC.;
HALLOWEEN INDUSTRY
ASSOCIATION, INC.; JUVENILE
PRODUCTS MANUFACTURERS
ASSOCIATION, INC.; TOY
ASSOCIATION, INC., DBA Safe to
Play Coalition,

   *Plaintiffs-Appellants*,

 v.

DAVE BADEN, in his official
capacity as Interim Director of the
Oregon Health Authority; ELLEN
ROSENBLUM, in her official capacity
as Attorney General for the State of
Oregon's Department of Justice,

   *Defendants-Appellees*.

No. 23-35114

D.C. No. 3:21-cv-
01757-SI

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted March 14, 2024
San Francisco, California

Filed July 15, 2024

Before:  M. Margaret McKeown and Morgan Christen,
Circuit Judges, and David A. Ezra,[*] District Judge.

Opinion by Judge Ezra

## SUMMARY[**]

### Preemption

The panel affirmed the district court's partial dismissal and partial summary judgment in favor of the defendants in an action brought by trade associations alleging that part of Oregon's Toxic-Free Kids Act and two of that statute's implementing regulations were preempted by the Federal Hazardous Substances Act and the Consumer Product Safety Act.

The Toxic-Free Kids Act directs the Oregon Health Authority, a state agency, to establish and maintain a list of high priority chemicals of concern for children's health.  The trade associations argued that the law should be enjoined

---

[*] The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

because it subjects the designated chemicals to requirements that are not identical to the federal framework.

The panel upheld the district court's conclusion that the federal Consumer Product Safety Commission had not, through the promulgation of a regulation, exercised independent judgment or expertise to trigger the express preemption provisions of the FHSA or CPSA with respect to all of the 73 chemicals at issue. Thus, the trade associations' facial challenges failed because they could not show that the Oregon statute and its implementing regulations were invalid in all their applications.

The panel held that the CPSA also did not impliedly preempt the Toxic-Free Kids Act and its regulations through principles of conflict preemption.

---

**COUNSEL**

Dwain M. Clifford (argued) and James T. McDermott, McDermott Weaver Connelly Clifford LLP, Portland, Oregon, for Plaintiffs-Appellants.

Carson L. Whitehead (argued), Assistant Attorney General; Benjamin Gutman, Solicitor General; Ellen F. Rosenblum, Attorney General; Oregon Department of Justice, Salem, Oregon; for Defendants-Appellees

**OPINION**

EZRA, District Judge:

Appellants American Apparel & Footwear Association, Inc. and other trade associations represent manufacturers of children's products. Appellants allege that part of Oregon's Toxic-Free Kids Act ("TFKA"), and two of the statute's implementing rules are preempted by the Federal Hazardous Substances Act ("FHSA") and the Consumer Product Safety Act ("CPSA"). Appellants appeal the district court's dismissal of their preemption claims.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's judgment. In so doing, we uphold the district court's conclusion that the Consumer Product Safety Commission ("the Commission") has not exercised independent judgment or expertise to trigger the express preemption provisions of the FHSA or CPSA with respect to all the chemicals at issue. Thus, Appellants' facial challenges fail because they cannot show that the TFKA and its implementing regulations are invalid in all their applications.

## BACKGROUND

In 2015, the Oregon Legislature enacted the Toxic-Free Kids Act. Or. Rev. Stat. §§ 431A.250–431A.280. The TFKA directs the Oregon Health Authority ("OHA"), a state agency, to establish and maintain a list of high priority chemicals of concern for children's health ("HPCCCH") and to issue regulations implementing the law. As of January 1, 2022, OHA's list contained 73 chemicals designated as HPCCCH. Or. Admin. R. 333-016-2020.

Appellants argue that Oregon's law should be enjoined because it subjects these 73 chemicals to requirements preempted by federal law. Specifically, they challenge Oregon Revised Statutes § 431A.258 (the "Notice Statute"), Oregon Administrative Rule 333-016-2060 (the "Notice Regulation"), and Oregon Administrative Rule 333-016-3015 (the "Exemption Regulation"), as unlawful because they impose requirements that are not identical to the federal framework.

The Notice Statute requires manufacturers of children's products, or the manufacturers' trade associations, to provide biennial notices when a children's product that is sold or offered for sale in Oregon contains a chemical listed as a HPCCCH, at or above a *de minimis* level. Or. Rev. Stat. § 431A.258(1)(a), (6).

The Notice Regulation, promulgated by OHA under the TFKA, specifies that a manufacturer's (or trade association's) notice must include the amount of the chemical used in each "unit" (defined as each "component part") within each product category, reported as a range. Or. Admin. R. 333-016-2060(5)(d), (1); *see also* Or. Admin. R. 333-016-2010(9) (defining "component part").[1] The Notice Regulation also sets the calendar for when notices are due according to a biennial notice schedule. *See* Or. Admin. R. 333-016-2060(3), (4).

A product may be banned in Oregon for failing to timely remove or substitute a chemical designated as a HPCCCH. "On or before the date on which a manufacturer of a children's product submits the third biennial notice required

---

[1] Citations to the Oregon Administrative Rules are to the versions in effect prior to January 1, 2024.

under [the Notice Statute] for a chemical that is present in a children's product, the manufacturer must remove or make a substitution for the chemical . . . or seek a waiver . . . , if the chemical is present in a children's product that is: (a) Mouthable; (b) A children's cosmetic; or (c) Made for, marketed for use by or marketed to children under three years of age."  Or. Rev. Stat. § 431A.260(1).

However, the TFKA and its regulations create carve-outs that allow manufacturers to be exempt from meeting the requirement of removal or substitution of HPCCCH.  *Id.* § 431A.260(4).    Under the Exemption Regulation, a manufacturer may apply for an exemption in any of the following four circumstances:

(a) The children's product contains a HPCCCH used in children's products at levels that are at or below allowable levels for children's products as established by the Consumer Product Safety Improvement Act of 2008, P.L. 110-314, 122 Stat. 3016, as in effect on July 27, 2015.

(b) A manufacturer is in compliance with a federal consumer product safety standard adopted under federal law that establishes allowable levels for children's products of a high priority chemical of concern for children's health used in children's products.

(c) The State of Washington has granted an exemption for the removal or substitution of a HPCCCH in the same children's product model for which the exemption is requested under OAR 333-016-3015.

(d) A children's product has been tested under applicable EN- 71 standards, by a laboratory that is accredited to conduct such testing under the current edition of ISO/IEC 17025 by an accreditation body that is a signatory to the International Laboratory Accreditation Cooperation mutual recognition arrangement.

Or. Admin. R. 333-016-3015(2).

Appellants take issue with the strings attached to the exemption provision. To be exempt, "a manufacturer must submit an exemption request and the fees specified in OAR 333-016-2080(1)(e)" and provide to OHA "written supporting documentation, an electronic copy of the certificate of conformity, if available, that is issued by the applicable authority or an authorized designate, and any other supporting documentation that provides evidence that the children's product meets the applicable standards described in the applicable category." Or. Admin. R. 333-016-3015(4). The required exemption fee is $1,500. Or. Admin. R. 333-016-2080(1)(e). For an exemption request under subsection 2(b) of the Exemption Regulation, the written supporting documentation must include "a citation to the federal consumer product safety standard adopted under federal law that establishes an allowable level of a HPCCCH in children's products, specific to allowable levels of the HPCCCH in children's products." Or. Admin. R. 333-016-3015(4)(b).

Appellants seek declaratory and injunctive relief against both the Director of OHA and the Oregon Attorney General in their official capacities. Appellants claim that the challenged provisions are preempted by the FHSA, 15

U.S.C. §§ 1261–1278a, and the CPSA, 15 U.S.C. §§ 2051–2089.

The district court granted OHA's motion to dismiss the FHSA preemption claim.  The district court then granted OHA's motion for summary judgment on Appellants' CPSA preemption claim.  Subsequently, Appellants timely filed this appeal.

## STANDARD OF REVIEW

We review de novo the district court's dismissal of the complaint. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  We also review de novo the district court's order granting summary judgment on preemption grounds. *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 675 (9th Cir. 2022).

## DISCUSSION

Preemption derives from the Supremacy Clause, which "invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough County v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712–13 (1985) (quotation and citation omitted).  The Supreme Court has identified "three different types of preemption"—express, conflict, and field. *Murphy v. NCAA*, 584 U.S. 453, 477 (2018).

The district court found that the FHSA and CPSA did not expressly preempt the provisions of the TFKA or its implementing regulations.  Appellants argue that these provisions are in fact expressly preempted, and in the alternative, that they are conflict preempted.  Field preemption was not argued by any party and so we do not reach that question here.

I.   Facial Preemption Standard

In this lawsuit, Appellants make only a facial preemption argument; they do not assert an as-applied challenge. The distinction between a facial challenge and one that is as applied is important. Unlike an as-applied challenge, which attacks the application of a statute to a specific set of facts, "a facial challenge is a challenge to an entire legislative enactment or provision." *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011). A party succeeds in a facial challenge only by establishing "that the law is unconstitutional in all of its applications" and fails "where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quotation and citation omitted).

As the Supreme Court explained in *United States v. Salerno*, "a facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." 481 U.S. 739, 745 (1987). The *Salerno* rule applies to a federal preemption facial challenge to a state statute. *See Anderson v. Edwards*, 514 U.S. 143, 155 n.6 (1995) (unanimous opinion) (applying *Salerno* to a federal preemption facial challenge to a state regulation); *see also Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) (recognizing that "*Salerno*'s applicability in preemption cases is not entirely clear," particularly in the First Amendment context, but "[w]ithout more direction, we have chosen to continue applying *Salerno*").

Under *Salerno*, a plaintiff must show that the state laws are invalid in all their applications. That means that

Appellants must show that all 73 HPCCCH are preempted by either the FHSA or the CPSA.

## II.  Express Preemption

"Congress may expressly preempt state law by enacting a clear statement to that effect." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 959 F.3d 1201, 1211 (9th Cir. 2020).   Express preemption is a question of statutory construction, requiring a court to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law. *Id.*; *Nat'l R.R. Passenger Corp. v. Su*, 41 F.4th 1147, 1152–53 (9th Cir. 2022).    Of course, congressional purpose "is the ultimate touchstone in every pre-emption case," *Altria Grp. v. Good*, 555 U.S. 70, 76 (2008) (quotation and citation omitted), and the plain wording of the express preemption clause "necessarily contains the best evidence of Congress'[s] preemptive intent." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (citation omitted).

Both the FHSA and CPSA have express preemption provisions. As explained below, both express preemption provisions rely on the actions of the Commission in issuing preempting regulations.

The FHSA express provision states:

> Except as provided in paragraphs (2), (3), and (4), *if under regulations of the Commission promulgated under or for the enforcement of section 2(q)* [15 U.S.C. § 1261(q)] a requirement is established to protect against a risk of illness or injury associated with a hazardous substance, no State or political

subdivision of a State may establish or continue in effect a requirement applicable to such substance and designed to protect against the same risk of illness or injury unless such requirement is identical to the requirement established under such regulations.

15 U.S.C. § 1261 note (b)(1)(B) (Effect Upon Federal and State Law) (emphasis added).

The CPSA express provision states:

*Whenever a consumer product safety standard under this chapter is in effect and applies* to a risk of injury associated with a consumer product, no State or political subdivision of a State shall have any authority either to establish or to continue in effect any provision of a safety standard or regulation which prescribes any requirements as to the performance, composition, contents, design, finish, construction, packaging, or labeling of such product which are designed to deal with the same risk of injury associated with such consumer product, unless such requirements are identical to the requirements of the Federal standard.

15 U.S.C. § 2075(a) (emphasis added). Neither party disputes that the text of the FHSA and CPSA requires the Commission to promulgate a regulation in order for the preemption provision to take effect. Therefore, for both the FHSA and CPSA, we must look to see what the Commission has done and whether the Commission has promulgated any

regulations regarding the 73 chemicals that OHA has chosen to regulate.

During oral argument before the district court, the parties agreed that 69 of the 73 chemicals designated by OHA as HPCCCH have not been expressly mentioned in any relevant regulation issued under the FHSA.  Moreover, the parties agreed that 57 of the 73 chemicals designated by OHA as HPCCCH have not been expressly mentioned in any relevant regulation issued under the CPSA.  Accordingly, it appears that the Commission failed to trigger the FHSA's preemption provision with respect to at least 69 of the 73 chemicals.  Similarly, the Commission failed to trigger the CPSA's preemption provision with respect to at least 57 of the 73 chemicals.

Appellants, however, contend that the Commission does not have to expressly mention any of the chemicals in the regulations to trigger express preemption of the FHSA. According to Appellants, the FHSA preempts state laws regulating all "banned hazardous substances" based on the statute's definition of that term and the incorporation of that definition into the Code of Federal Regulations.  Appellants contend that once the Commission adopted the FHSA's statutory definition of "banned hazardous substance" in a regulation, the preemption provision was triggered for all banned hazardous substances.

To fully explore Appellants' theory of preemption, we begin with the statutory definition of "banned hazardous substance" in the FHSA.  Section 1261(q)(1)(A) defines "banned hazardous substance" as "any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom

such toy or other article is entrusted." Section 1261(q)(1)(B) further defines "banned hazardous substance" as "any hazardous substance intended . . . for use in the household, which the [Consumer Product Safety] Commission by regulation classifies as a 'banned hazardous substance.'"

This statutory definition is repeated in 16 C.F.R. § 1500.3(b)(15)(i). *Compare* 15 U.S.C. § 1261(q)(1) (defining "banned hazardous substance"), *with* 16 C.F.R. § 1500.3(b)(15)(i) (defining "banned hazardous substance"). It is Appellants' contention that the Commission triggered the FHSA's preemption provision for all "banned hazardous substances" by incorporating this statutory definition into a regulation. As a result, all HPCCCH that also meet the federal definition of "banned hazardous substance" would, by virtue of the FHSA's preemption provision, not be subject to the challenged provisions of the TFKA.

However, the federal regulation states, "the definitions set forth in section 2 of the act are applicable to this part and are *repeated for convenience as follows*." 16 C.F.R. § 1500.3(b) (emphasis added).[2] Essentially, by incorporating the statutory definition of "banned hazardous substance," the rule does little more than save the reader from having to turn back to the statute to look up the relevant definitions. By simply copying and incorporating the statutory definition into the federal regulation, the Commission has not promulgated a "requirement . . . to protect against a risk of illness or injury associated with a hazardous substance" "under or for the enforcement" of

---

[2] The regulation defining "banned hazardous substance" (16 C.F.R. § 1500.3), was promulgated under the authority of the FHSA. The Commission's regulations for implementing the CPSA are contained in 16 C.F.R. Parts 1101 through 1460.

§ 1261(q).   § 1261 note (b)(1)(B).   In other words, the Commission has not exercised any independent judgment to trigger the preemption clause under the FHSA.

In some instances, the Commission has exercised its independent judgment to promulgate regulations.  *See e.g.*, 16 C.F.R. § 1303.1(a) (banning toys and other articles intended for use by children that bear "lead-containing paint" and furniture articles for consumer use that bear "lead-containing paint"); 16 C.F.R. § 1500.18(a) (listing fourteen specific toys as "banned hazardous substances" because they present mechanical hazards).  However, the Commission has not promulgated regulations as to all 73 chemicals on the OHA list.  Therefore, Appellants have failed to establish "no set of circumstances exists under which the Act would be valid."  *Salerno*, 481 U.S. at 745; *see also Puente Ariz.*, 821 F.3d at 1107–08.

Similarly, no federal regulation promulgated under the CPSA exists that would preempt the OHA from regulating all 73 HPCCCH.  Indeed, the CPSA's definition of a "banned hazardous product" shows that Congress intended for the Commission to use its expertise when banning a product, substance, or material.  The CPSA states that the Commission may promulgate a rule declaring a "banned hazardous product" when: (1) a consumer product is being, or will be, distributed in commerce and such consumer product presents an unreasonable risk of injury; and (2) no feasible consumer product safety standard under this chapter would adequately protect the public from the unreasonable risk of injury associated with such product.  15 U.S.C. § 2057.

Congress intended the Commission to exercise judgment and expertise when banning a product, substance, or

material.  But Appellants' interpretation of the regulation would render Congress's careful restrictions on the preemptive effect of the FHSA and CPSA meaningless because it would absolve the Commission from having to act by exercising any independent judgment.  In Appellants' view, the Commission triggers express preemption by simply incorporating a statutory definition into the regulations.  This runs counter to the statutory text and congressional intent —which provides for preemption when the Commission has enacted regulations with discretion using expertise and independent judgment.  *See Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687, 708 (1995) (holding that Congress delegated to the Secretary of the Interior the power to regulate within his sphere of expertise); John F. Manning & Matthew C. Stephenson, *Legislation and Regulation: Cases and Materials* 380–81 (3d ed. 2017) (presenting the agency expertise rationale for congressional delegation).  In repeating the statutory definition, the Commission has not exercised any independent judgment or expertise.  Core to our federalist system is the State's right to enact its own legislation in the absence of federal regulation.  *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting) ("Denial of the right to experiment may be fraught with serious consequences to the nation.  It is one of the happy incidents of the federal system that a single courageous state may . . . serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.").

With respect to the FHSA, precedent from our sister circuits supports the understanding it was not meant to preclude states from regulating all toxic chemicals that fall within its scope.  It is worth repeating the District Court's

citation to *Toy Manufacturers of America, Inc. v. Blumenthal*:

> The FHSA also permits a system of partial preemption, under which, in an area in which the Commission has not acted, state regulations may supplement the regulations adopted by the CPSC. . . . *That is, preemption obtains only where a state action regulates the same* "hazardous substance" and the same "risk of illness or injury associated with [that] hazardous substance" which a FHSA regulation regulates.

986 F.2d 615, 617–18 (2d Cir. 1992) (emphasis added). The Second Circuit concluded:

> Here the Commission has not, subtly or otherwise, manifested an intention to shut out state action. Neither the actual words of the CPSC regulations, the statements of the Commissioners explaining their decision not to issue additional regulations, nor any other action by the Commission, indicates an intent to establish a comprehensive scheme of or assert exclusive control over the area of small parts regulation.

*Id.* at 623.  Our holding today fits comfortably within prior case law.

Appellants contend that the general definitions in 16 C.F.R. § 1500.3(b) do more than serve convenience. Appellants point to several cases where the Commission has initiated enforcement proceedings pursuant to Section

1261(q)(1)(A) of the FHSA, which includes a definition of "banned hazardous substance" that is incorporated into 16 C.F.R. § 1500.3(b)(15), and not pursuant to any substance-specific regulation.   To reiterate, Section 1261(q)(1)(A) of the FHSA defines banned hazardous substance as "any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted."   The Commission has enforced the FHSA under this provision regardless of whether the Commission has issued a regulation on the specific substance at issue.   For instance, in *X-Tra Art v. Consumer Product Safety Commission*, the Commission initiated an enforcement action against the maker of a rainbow shaving cream because it fit the definition of a "banned hazardous substance" as defined in Section 1261(q)(1)(A).   969 F.2d 793, 795–96 (9th Cir. 1992); *see also United States v. Articles of Hazardous Substance*, 588 F.2d 39, 42 (4th Cir. 1978) ("Under FHSA, a substance may be a 'banned hazardous substance' either by meeting the statutory definition in Section 1261(q)(1)(A), or by being so defined by regulation after formal rule-making under Sections 1261(q)(1)(B) and (q)(2).").

However, just because the Commission can enforce the FHSA under Section 1261(q)(1)(A), does not mean that the express preemption provision is triggered as to any substance that might fall within that definition.   The takeaway from *X-Tra* and *Articles of Hazardous Substance* is that Section 1261(q)(1)(A) can be used by the Commission to proceed against manufacturers of hazardous substances directly—*i.e.*, in the absence of a regulation targeting the substance at issue.   But those cases do not hold that incorporation of Section 1261(q)(1)(A)'s definition

constitutes an independent act that triggers the FHSA's preemption clause. In short, enforcement does not equate to preemption.

Therefore, according to the text, purpose, and precedent under the FHSA and CPSA, we affirm the district court's holding that the express preemption provision has not been triggered by merely restating the statutory definitions in the Code of Federal Regulations.

Because the Commission has not acted to regulate all chemicals on OHA's list, the FHSA and CPSA do not, at least on a facial challenge, expressly preempt the Oregon statutory or regulatory provisions at issue. Appellants cannot prove that "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745; *see also Puente Ariz.*, 821 F.3d at 1107–08.[3]

---

[3] On appeal, Appellants argue that the district court erred in not evaluating the preemption claim under the CPSA as an "as-applied" challenge, to which *Salerno* would not apply. Upon review of the record, the district court properly determined that Appellants were making a facial challenge. Appellants represented many times to the district court and to OHA that they were only bringing a facial challenge to the Notice Statute, the Notice Regulation, and the Exemption Regulation. In their Complaint, Appellants did not specifically seek relief for the sixteen chemical compounds identified in regulations issued under the CPSA. At oral argument in front of the district court, Appellants "acknowledged that they [were] only bringing a facial challenge in this lawsuit . . . ." Moreover, the district court did not consider an as-applied challenge because there was no record to make such a determination. Discovery would be necessary to determine, for example, whether Appellants have standing to bring claims related to the sixteen chemicals they now claim are at issue. Appellants declined to provide such discovery because they represented they were not bringing an "as-applied" challenge.

III.    Implied Conflict Preemption

Alternatively, Appellants argue that the CPSA impliedly preempts the Notice Statute, Notice Regulation, and Exemption Regulation through principles of conflict preemption.   Implied conflict preemption "occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Puente Ariz.*, 821 F.3d at 1103 (quotation and citation omitted).   Appellants assert that any non-identical state requirement in the TFKA and its implementing regulations necessarily "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

As stated above, Appellants claim that the challenged provisions of the TFKA impose requirements that are not identical to federal law.  However, "[t]he mere fact that there is tension between federal and state law is not enough to establish conflict preemption." *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1118 (9th Cir. 2020) (cleaned up).  Under both express and implied conflict preemption, "state law is preempted 'to the extent it actually interferes with the methods by which the federal regulatory scheme was designed to reach its goal.'" *Metrophones Telecomms., Inc. v. Glob. Crossing Telecomms., Inc.*, 423 F.3d 1056, 1073 (9th Cir. 2005) (alterations omitted) (quoting *Ting v. AT&T*, 319 F.3d 1126, 1137 (2003)).

Our analysis of implied conflict preemption is "substantially identical" to our express preemption analysis, because "[t]he presence of an express preemption provision supports an inference that Congress did not intend to

preempt matters *beyond* the reach of that provision." *Id.* at 1072–73. We agree that by limiting the CPSA's preemptive effect to "consumer product safety standards" in the express preemption provision, Congress's scheme "clearly contemplates that state and local regulation [of consumer products] will continue until the Commission has acted." *See Nat'l Kerosene Heater Ass'n v. Massachusetts*, 653 F. Supp. 1079, 1090 (D. Mass. 1986).

Moreover, as with express preemption, the *Salerno* standard applies to conflict preemption. *See, e.g.*, *Puente Ariz.*, 821 F.3d at 1104–05; *CDK Glob. LLC v. Brnovich*, 16 F.4th 1266, 1277 (9th Cir. 2021) ("Because this is a facial challenge, it is [plaintiff's] burden to show that every possible application of the law would conflict with the Copyright Act."); *Knox v. Brnovich*, 907 F.3d 1167, 1177 (9th Cir. 2018) (applying the "no set of circumstances" test to field and conflict preemption). Applying *Salerno*, the district court held that the challenged provisions "are not facially preempted because they have obvious constitutional applications." The district court reasoned that applications of the Oregon provisions to those substances that the Commission has not yet regulated are constitutional. Because the TFKA is not preempted as to at least the 57 HPCCCH that are not identified in any regulations issued under the CPSA, the district court correctly found that Appellants' implied conflict preemption challenge under the CPSA fails. *See Knox*, 907 F.3d at 1180 (holding that when state legislation imposes penalties for activities "excluded from Congress's regulatory scheme, it does not conflict with that regulatory scheme").

Therefore, for the same reasons that we conclude there is no express preemption, we conclude that there is no implied conflict preemption.

## CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal.

**AFFIRMED.**